ROTHENBERG, J.
Pedro Castro and Maria Robles de Castro (“the Castros”) appeal the trial court’s order denying their motion to vacate a final judgment of foreclosure. For the following reasons, we reverse.
The Castros own a condominium, unit 928, at the Charter Club Condominiums. The Charter Club, Inc.’s (“the Association”) records list the Castros’ daughter’s home address as their alternate address and billing address. When the Castros fell behind on their maintenance and assessment fee payments, the Association sent the Castros a notice of intent to file a lien (“NOL”) against their unit for the outstanding maintenance fees. The NOL, which was sent to the Castros at their daughter’s residence via certified mail, was received and signed for on November 29, 2008, and the Association recorded its claim of lien against the property on April 2, 2009.
The Association filed this action to foreclose on the Castros’ condominium on August 4, 2009. The first return of service states that, on December 7, 2009, the process server “discontinued attempting service” on the Castros at their condominium address “[f|or the reasons detailed in the comments below,” but failed to include the “comments” as indicated. No attempt was made to serve the Castros at their daughter’s address, where the NOL had been successfully served.
The second attempt was made in May of 2010. A verified return of non-service, signed by the process server on May 17, 2010, states that the process server went to the daughter’s residence on March 29, 2010, and spoke to a woman (the Castros’ daughter) who informed him that the Cast-ros lived at 6701 Collins Avenue, unit 8704, on Miami Beach, but that when the process server attempted to serve the Castros at the 6701 Collins Avenue address, no such unit number existed. The daughter’s sworn affidavit, however, states that when the process server came to her home looking for her parents, he did not tell her that her parents’ condominium was in foreclosure and that he was trying to obtain service on her parents. When asked where her parents could be located, the daughter avers that she told the process server that her parents lived at 6365 Collins Avenue, not 6701 Collins Avenue, but the process server did not write down the address. It is undisputed that the process server never returned to the daughter’s residence to verify the address or to seek the daughter’s assistance in serving her parents.
*1058 On June 29, 2010, the Association sought to obtain jurisdiction over the Castros through notice by publication. In support thereof, the Association’s counsel filed an affidavit of constructive service, stating that “after making a diligent search and inquiry, the residence of said Defendant(s), PEDRO CASTRO and NORMA ROBLES DE CASTRO, is unknown to Affiant, and Affiant is unable to determine if said Defendant is living or dead.” This affidavit was signed by the Association’s counsel despite the fact that he knew the Castros were alive and he had been in contact with the Castros’ daughter, attempting to negotiate terms for the Castros to pay down their debt to the Association.
As a result of the Association’s negotiations with the Castros’ daughter, the Association agreed to allow the Castros to lease the unit and have the tenant pay the rent directly to the Association’s attorney in order to offset the amount owed to the Association by the Castros. The lease was signed by the Castros, and the tenant was approved by the Association in September of 2010 and again in September of 2011 upon renewal of the lease. The tenant’s unrebutted affidavit provided that she paid the rent directly to the Association’s counsel, lived in the condominium with the Association’s knowledge and approval, and was never advised of the existence of the subject lawsuit, nor was she asked to provide any contact information for the Cast-ros.
A year-and-a-half after filing the affidavit of constructive notice, while the tenant continued to reside at the condominium and pay rent directly to the Association’s counsel, and despite the Association having direct contact with the Castros’ daughter, the Association filed an ex parte motion for default based on service by publication. The motion for default was accompanied by an affidavit of diligent search and inquiry for service of process by publication. The affidavit states that the Association’s counsel had conducted an “extensive diligent search” for the Castros using the “PeopleMap database,” the Property Appraiser’s Office, and military records. On January 4, 2012, after a hearing on the Association’s ex parte motion, default was entered against the Castros.
On January 23, 2012, the Association filed a motion for summary judgment (“MSJ”). The MSJ was set for hearing at motion calendar on February 29, 2012. Although the Association knew the Castros no longer resided in the condominium, and the Association’s records listed the Cast-ros’ daughter’s home address as their alternate address and billing address, the Association sent its notice of the hearing for the Association’s MSJ to the Castros at the condominium. When the tenant occupying the condominium received the notice, she delivered it to the Castros’ daughter. The Castros’ daughter attended the MSJ hearing accompanied by an attorney. The attorney accompanying the Castros’ daughter did not file a notice of appearance in the case and Pedro Castro’s supplemental affidavit states that neither he nor his wife were aware of the hearing and neither had retained nor authorized any attorney to represent them in the case or at the hearing. At the conclusion of the hearing, the trial court granted the Association’s motion for final judgment of foreclosure.
When the Castros learned what happened, they obtained counsel and timely filed a motion to vacate the default and the default judgment, and an emergency motion to cancel the foreclosure sale, arguing that the service by publication was defective, and included affidavits in support of their motions. After an emergency hearing on the motion to cancel sale, the trial court denied the motion and noted that the *1059 issue of service could be “raised after the sale with the presiding judge at any time.” Thereupon, the Castros filed their objections to the sale and the certificate of sale.
At the hearing conducted by the trial court, the Castros argued that the Association’s constructive service affidavit and notice of action were legally insufficient on their face, and that the Association could not rely on the constructive service statute after entering into an agreement with the Castros to allow a tenant to occupy the unit. The trial court denied the Castros’ motion to vacate. This appeal followed.
DISCUSSION
We review a trial court’s denial of a motion to vacate a final judgment for abuse of discretion. Rodriguez-Faro v. M. Escarda Contractor, Inc., 69 So.3d 1097, 1098 (Fla. 3d DCA 2011); Shields v. Flinn, 528 So.2d 967, 968 (Fla. 3d DCA 1988). In reviewing a trial court’s order denying a motion to vacate, the court’s sole concern is whether the trial court abused its discretion in refusing to vacate the final judgment. Bland v. Mitchell, 245 So.2d 47, 48 (Fla.1970); Rushing v. Chappell, 247 So.2d 749, 751 (Fla. 1st DCA 1971); Graham v. Eisele, 245 So.2d 682, 683 (Fla. 3d DCA 1971).
It is axiomatic, that a judgment entered without due service of process is void. N.L. v. Dep’t of Children & Family Servs., 960 So.2d 810, 813 (Fla. 3d DCA 2007); Dor Cha, Inc. v. Hollingsworth, 876 So.2d 678, 679 (Fla. 4th DCA 2004); Falkner v. Amerifirst Fed. Sav. & Loan Ass’n, 489 So.2d 758, 759 (Fla. 3d DCA 1986). Moreover, where a judgment is void due to defective service, the party seeking to vacate such a judgment need not show any other basis for vacating the judgment. Willoughby v. Seese Realty Inc., 421 So.2d 691 (Fla. 4th DCA 1982).
Validity of Service
Although the Florida statutes allow for constructive service of process, Chapter 49 sets forth specific procedures that must be strictly followed in order to establish personal jurisdiction through constructive service. Fed. Nat’l Mortg. Ass’n v. Fandino, 751 So.2d 752, 753 (Fla. 3d DCA 2000). The party seeking to establish jurisdiction through constructive service has the burden to establish the validity of service of process. Shepheard v. Deutsche Bank Trust Co. Ams., 922 So.2d 340, 343 (Fla. 5th DCA 2006) (citing Torres v. Arnco Constr., Inc., 867 So.2d 583, 587 (Fla. 5th DCA 2004)). Moreover, because lack of personal service raises due process issues, the plaintiff seeking constructive service must strictly comply with the requirements of Chapter 49 of the Florida Statutes. Redfield Invs., A.V.V. v. Vill. of Pinecrest, 990 So.2d 1135, 1138 (Fla. 3d DCA 2008). Therefore, the statute is strictly construed against the plaintiff seeking service under Chapter 49, and absent strict compliance with the statute, service is improper and any resulting proceeding or judgment is void. Corneal v. O’Brien, 707 So.2d 908, 909 (Fla. 3d DCA 1998).
In ruling on the validity of constructive service, the trial court must determine the sufficiency of the affidavit and of the search to locate the defendant. Redfield Invs., A.V.V., 990 So.2d at 1138 (citing Giron v. Ugly Mortg., Inc., 935 So.2d 580, 582 (Fla. 3d DCA 2006)). In the instant case, the Association’s attempted service on the Castros failed to satisfy the statutory requirements for constructive service, thus the judgment entered against the Castros was void and should have been vacated. Therefore, the trial court abused its discretion in denying the Castros’ motion to vacate the judgment entered against them.
*1060 A. The Affidavit of Diligent Search
Notably, as a condition precedent to service by publication, the plaintiff or plaintiffs attorney must execute and file a sworn statement showing that a “diligent search and inquiry have been made to discover the name and residence of such person, and that the same is set forth in said sworn statement as particularly as is known to the affiant....” § 49.041(1), Fla. Stat. (2009). Therefore, in order to obtain constructive service on the Castros, the Association had to provide a sworn statement, stating with particularity that it conducted a diligent search and inquiry to discover the address of the Castros and that such address was unknown to the Association. Averments in conclusory terms are insufficient to satisfy the particularity required pursuant to section 49.041. Redfield Invs., A.V.V., 990 So.2d at 1140 (holding that the affidavit filed in support of constructive service was legally insufficient because it contained qualifying language that the inquiry had “not yet” revealed an accurate address for the defendant and did not comply with the statute).
The affidavit of diligent search filed by the Association merely states that the Castros’ “Residence [is] Unknown.” This is insufficient to satisfy the “particularity” requirement of section 49.041. See Wiggins v. Portmay Corp., 432 So.2d 802, 803 (Fla. 1st DCA 1983) (holding that the statement that the “[affiant] has made a diligent search and inquiry to determine the whereabouts of the Defendant and/or his residence herein, and that the same are unknown to the Plaintiff’ was insufficient). More specifically, the affidavit fails to provide with any particularity the information actually known by the Association—the address of the condominium, which was the Castros’ last known address, and their daughter’s address, listed as the Castros’ billing or alternate address in the Association’s records. Gans v. Heathgate-Sunflower Homeowners Ass’n, 593 So.2d 549, 552 (Fla. 4th DCA 1992) (holding that the affidavit which did not list defendant’s mailing address, and was known to the plaintiff, was legally defective). The undisputed facts reveal that the Association’s records clearly listed the Castros’ daughter’s address as their alternate address and billing address, and that the Association’s counsel communicated with the Cast-ros’ daughter about the Castros’ condominium via email and telephone on multiple occasions, and counsel could, and should, have at least listed the daughter’s address on the affidavit. The Association’s failure to include this information on its affidavit supporting constructive service deprived the Clerk and the court of the ability to mail a copy of the notice by publication to the Castros. Gans, 593 So.2d at 552. As a result, the Clerk did not send the notice of suit to the Castros’ last known address, the condominium at the Charter Club, which the tenant would have received and forwarded either to the Castros or to their daughter; or to the daughter’s address, listed in the Association records as the Castros’ alternate and billing address.
We also note that the process server’s return of service is similarly defective. The December 8, 2009, return of service affidavit is incomplete and facially defective. Although the return of service states that the process server has discontinued trying to serve the Castros with the complaint and summons “[f]or the reasons detailed in the comments below,” there are no comments, and the affidavit of diligent search does not provide any information as to what steps were taken by the process server to attempt personal service of the complaint and summons on the Castros.
Based on the Association’s failure to strictly comply with the requirements of *1061 Chapter 49, which requires filing of a sworn statement specifying, with particularity, what efforts and steps were taken to conduct a diligent search, we conclude that the constructive service on the Cast-ros was defective as a matter of law. The merely conelusory claims that a diligent search was conducted, without specificity as to what steps were taken to attempt to locate the Castros, does not support constructive service.
B. Diligent Search
Having determined that the Association’s affidavit of diligent search was defective, we now turn to the sufficiency of the Association’s search. Redfield Invs., A.V.V., 990 So.2d at 1138. To test the sufficiency of the Association’s search under Chapter 49, we consider whether the Association “reasonably employed the knowledge at [its] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstance to acquire the information necessary to enable [the Association] to effect personal service on the defendant.” Lewis v. Fifth Third Mortg. Co., 38 So.3d 157, 164 (Fla. 3d DCA 2010) (quoting Canzoniero v. Canzoniero, 305 So.2d 801, 803 (Fla. 4th DCA 1975)); Gmaz v. King, 238 So.2d 511, 514 (Fla. 2d DCA 1970) (noting that the test is whether the party seeking constructive service employed all of the knowledge at its command in conducting the search) (quoting McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 831 (1926)). The affidavit of diligent search filed by the Association provides that the Association conducted a search using “(a) ... the Peo-pleMap database; (b) search of the Property Appraisers Office website; (c) listings within the Plaintiffs records left by the defendant; (d) search to determine whether the Defendant is in the military.” A review of the record evidences that the Association did not meet its burden of showing that it conducted a diligent search as required by the statute.
In the instant case, the Association failed to use the knowledge readily available to it, and well within its command, to locate and serve the Castros. Notably, the Castros had listed their daughter’s address as their alternate address and billing address in the Association’s records, the Association’s attorney had specifically dealt with the Castros’ daughter in negotiating an agreement for the Castros to pay the overdue association fees, and the Association knew of, and had approved, the tenant’s lease of the condominium. Yet, the Association did not serve the Castros at their daughter’s address or even inform her of their attempt to locate the Castros in order to serve them with notice of suit. Instead, the process server merely asked the daughter if her parents were at the house and did not tell her the purpose of his visit. And, according to the daughter, the process server did not write down the address she provided to him, and as a result, the process server went to a nonexistent address to serve her parents. The process server never revisited the daughter or attempted to verify that he had gone to the correct address.
Additionally, the Association knew that there was a tenant in the condominium — it had approved the lease twice and received rent checks from the tenant for two years. Yet, the Association never attempted to contact the tenant to see if the tenant knew where the Castros could be found. See Redfield Invs., A.V.V., 990 So.2d at 1139 (“[TJhe effort should usually extend to inquiry of persons likely or presumed to know the facts sought.”) (emphasis in original) (quoting Levenson v. McCarty, 877 So.2d 818, 820 (Fla. 4th DCA 2004)); Dor Cha, Inc., 876 So.2d at 680 (holding that diligent search requires inquiry of anyone likely or presumed to be likely to *1062 know the defendant’s whereabouts); Gans, 593 So.2d at 551 (holding process server’s failure to question the defendant’s neighbors evidenced a lack of diligence in conducting the search and service by publication was improper).
We conclude that the Association did not perform a diligent search sufficient to satisfy Chapter 49. The Association’s counsel knew how to locate, and was in contact with, the Castros’ daughter; the Association had the daughter’s address on record as an alternate address and billing address for the Castros; and the Association knew that there was a tenant living at the Cast-ros’ last known address, who was making the rent payments directly to the Association’s attorney. The Association did not use all of the knowledge in its command or extend its inquiry to those “persons likely or presumed to know the facts sought.” Redfield Invs., A.V.V., 990 So.2d at 1139. The search and inquiry performed by the Association does not satisfy the constructive notice statute. Therefore, notice by publication was improper; the judgment is void; and the judgment must be vacated. Waiver of Notice
We briefly address the Association’s waiver argument. The Association contends that even if constructive service was defective, the Castros waived its objections to service because they attended, and participated at, the hearing on the Association’s motion for summary judgment. We disagree.
There is no transcript of the summary judgment hearing. Although the Association had provided record cites in support of its claim that the Castros were represented by counsel at the hearing, these citations do not support the Association’s position, and the record supports the opposite conclusion. The Castros stated under oath that they did not retain the services of the attorney who accompanied their daughter to the hearing; there was no notice of appearance filed by the attorney who accompanied the daughter; and the Association’s counsel, who claimed the Castros were represented by counsel at the hearing, could not provide a name for the attorney who appeared. Because there is no hearing transcript, we are confined to the record and the record evidence does not demonstrate that the Castros were represented by counsel at the summary judgment hearing. Accordingly, we conclude the Castros did not waive their right to challenge service of process.
Reversed.